## PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE (Doc. 80)

**Case No.: 3:25-cv-00633-MMH-MCR**
**United States District Court, Middle District of Florida (Jacksonville Division)**
**Plaintiff: Charles C. Force, Pro Se**

Plaintiff respectfully submits this Response to the Court's *Order to Show Cause* dated October 15, 2025 (Doc. 80

### I. Addressing False Allegation of Failure to Respond to Defendant Kruss's Motion to Dismiss

**ALLEGATION:** In Doc. 80 at PageID 785–786, the Court states that "Force has not responded to Defendant Kruss's Motion to Dismiss (Doc. 55) and instead has continued filing other documents that do not comply with the Rules or the Court's prior instructions.

RESPONSE: This statement is **objectively incorrect**. On **September 8, 2025**, Plaintiff filed **Doc. 71 — Plaintiff's Opposition to Defendant Kruss's Motion to Dismiss**, a twenty-one-page pleading addressing every ground raised in Doc. 55. The CM/ECF header confirms: *Case No. 3:25-cv-00633-MMH-MCR, Document 71, Filed 09/08/25, PageID 609-629.* That filing methodically as confirmed by the ECF docket header and visible on the public record, demonstrating full compliance with procedural timing and format rebuts each argument in Kruss's motion, cites controlling Eleventh Circuit precedent, and includes detailed factual and procedural references identified Defendant Kruss's 48-day delay beyond the twenty-one-day limit imposed by Rule 12(a)(1)(A)(i), establishing that the default had already attached before any motion to dismiss was filed.

4

By disregarding Doc. 71's existence, the Order misstates the record and renders its underlying premise — that Plaintiff "failed to respond" — factually false. This verifiable error undercuts the reliability of the Order and demonstrates either a careless or prejudicial review of the docket before the issuance of order  Doc. 80.  This misrepresentation is particularly serious because it recurs throughout the Order to Show Cause as a foundation for subsequent allegations of non-compliance.

In addition, the Court's reference to "Defendant Kruss's Motion to Dismiss (Doc. 55)" is factually impossible. Docket No. 55 is **not** a motion to dismiss but a blank placeholder entry labeled *"Clerk's Order for Motion on Entry of Default,"* with no PDF, signature, or text filed on the record. No written order, ruling, or motion exists under that number. The only authentic motion to dismiss by Gustavo Kruss was filed weeks later and was fully opposed by Plaintiff's Doc. 71 on September 8, 2025. The phantom "Doc. 55 order" appears to have been used retroactively to nullify Plaintiff's properly filed Motion for Clerk's Entry of Default (Doc. 26, filed July 31, 2025), which the docket now shows as "terminated" , even though the underlying motion (Doc. 26) was timely, facially valid, and remained unaddressed for over two weeks before this unexplained retroactive notation appeared. on August 15, 2025 — citing this non-existent Doc. 55 as the cause. As detailed in Plaintiff's Judicial Notice (Doc. 50), this unexplained retroactive notation purported to "accept as if timely filed" a motion that was **68 days past** the 21-day deadline prescribed by Rule 12(a)(1)(A)(i). Yet no written order was ever entered in violation of Rule 79(a)'s requirement that every order of the court be recorded in the civil docket. This missing record deprived Plaintiff of mandatory relief under Rule 55(a),

2

which together with Rule 79(a)'s recording requirement, both of which were specifically raised in Plaintiff's Judicial Notice (Doc. 50) and his Objection and Notice (Doc. 62), commands the Clerk to enter default when a party fails to plead or otherwise defend. In contrast, Defendant Kruss never provided a meaningful response to the substantive allegations of the complaint—including the void nature of the underlying claim, his client's lack of standing, that the claim he brought forward was barred by Federal law (FDCPA as established and exhibited in the complaint) and his participation in a prohibited debt-recycling scheme and the manufacturing of evidence —all of which were specifically were left unaddressed addressed and refuted in Plaintiff's Opposition (Doc. 71). In light of these details, it's clear that the opposition was both comprehensive and compliant with procedural rules. Therefore, any suggestion that Plaintiff failed to adhere to court directives is without basis and likely arises from an oversight rather than any omission by Plaintiff.

**Respectfully, the mentioned directive Doc. #4** is not inapplicable as a claimed prior notice of violation, as it is a general notice sent to the litigants at the start of a case, and does not address any specific failure by Plaintiff.

**The mentioned directive Doc. #28 concerned Plaintiff's initial exceeding of page limits** in his response to the AG's well evolved shotgun motion to dismiss, that was loaded with many misapplied doctrines that required space to adequately address. A simple two word titled doctrine , in itself, implies volumes of PRESUMED law, which cannot be addressed in the same amount of space when applied over-broadly ato the issues it claims  to address, especially when such have misapplied to mischarteized

issues.   This misuse and mischaracterization of these doctrines were comprehensively in the opposition answer, but the plaintiff was unaware of court local rule to page limits applying to a response to a complicated motion to dismiss. Once that issue was understood, the Plaintiff promptly corrected it, re-filing a truncated version after the court truck his extensively researched effort. Once understood that this applies to responses to very complex MTDs. the pro se Plaintiff has had no such repeat conflict with that local rule, and certainly is not grounds to dismiss a declaratory relief case.  Ironically, a similar violation of local page limit rule was breached cy Defendant Capital One, yet it was not sanctioned (struck from the record), as was the Plaintiff's filing, as noted on record, This and other asymmetrical applications of local rules against the Plaintiff  was formally documented on the records in Plaintiff's 'Objection and Notice of Concerns Regarding Court Procedure' (Doc. 62).

 Additionally, the Court granted Capital One's Motion for Stay of Discovery (Doc. 55) based on representations that Plaintiff opposed the motion but failed to respond. **This statement is highly misleading, because the docket clearly showed at that time that Defendants had missed critical response deadlines by 48 days, to which this Plaintiff, pro se, filed his own motions for default entry. The court's moving forward on Doc. 55 was an error as well, because the defendant filed responses to this Plaintiff's complaint and default entry that and fatally late, 48 days beyond all response deadlines,**

**Directive Doc 53 Case Management Conference**

The order refers to Doc. #53 striking the Plaintiffs order, was derived from the same issue that resulted in ALL the defendants case manage conference report being struck

4

from the record, not just the Plaintiff.  is an issue that not only involved the Plaintiff,

struck the case management conference that was filed by all the parties, and the details

are in the court record  all parties' case management filings after a misunderstanding

stemming from actions of Assistant AG Spears, as detailed on Exhibit Page ID #402,

Doc 45-1, without implying specific fault.

The Court's allegations regarding this case management conference result from a significant

misrepresentation by Assistant AG Spears.  Spears stated to the Plaintiff what she was in

contact with the other defendants and sent the Plaintiff a signed (by Spears) draft case

management report for his signature, and that she would take charge of getting the signatures

from all the other defendants and that she would file the completed report for the group, before

the court deadline.  . The Plaintiff signed and returned the report that Spears prepared  signed ,

on the same day he received it. Plaintiff relied on her statement in good faith  that she would do

as promised, and secure secure the defendants' signatures and file the document on behalf of

the group. However, without notice to the Plaintiff, Spears created an entirely new case

management report with the other defendants. This new report was then filed, excluding the

Plaintiff, just before the deadline. This action appeared intended to place the Plaintiff at risk of

default.   As the Plaintiff suspected such play of gamesmanship when the report was not filed

earlier on the day of the deadline, to counteract this deceptive move, the Plaintiff filed a copy of

the original report Spears had prepared and that both he and Spears had the plaintiff had

signed, ensuring Plaintiff's compliance with the court's deadlines. This decisive action was taken

to thwart any potential default that Spears was orchestrating.  full details of this event were

comprehensively documented in the 17 pages (including exhibits) filed  in the notice to the court

Doc 51.   This documentation of events, was later struck  the court 5 days later in a subsequent

order, Document 53. This action by the court prevented an accurate consideration of the

misrepresentation made by Assistant AG Spears and the Plaintiff's efforts to comply with

procedural requirements.   In this striking of the Plaintiffs notice to the court of how this case management report issue transpired (with the court striking of the report filed by all parties, not just the Plaintiff) In striking the Plaintiff's notice—which documented the issues surrounding the case management report—the court claimed the reason was to avoid "cluttering the docket with additional notices" and directed the Plaintiff to consolidate his arguments in response to existing court directives. The Plaintiff notes that this notice was appropriate and necessary to ensure the record fully reflected this significant event. The Plaintiff was surprised by the court's decision to strike the notice under such circumstances. The notices filed provided a clear explanation of what transpired and were self-evident. The Plaintiff objects to their striking, emphasizing that it disregarded the "safe harbor" provision that  protects such filings from being dismissed without due consideration.

Local Rule 3.01.  United States v. Rey, 811 F.2d 1453, 1457 (11th Cir. 1987) (courts must take judicial notice of adjudicative facts under Rule 201).

### **Directive #4 Doc 67**

1. **Motion to Dismiss, which violated Rule 7(b):**

   *Pro se* Plaintiff was unaware of Rule 7(b). The pleading was refiled, resolving the issue.

2. **Page Limit Allegations:**

   The order repeats the page limit issue multiple times, citing Docs 67 and 28. This occurred once due to my initial *pro se* unfamiliarity with the rule. The court struck it, and I promptly corrected and refiled. It hasn't recurred. Notably, Capital One violated the same rule without similar consequences.

3. **Failure to Include Local Rule 3.01(g) Certification (Doc. 59):**

   **Allegation:** Missing certification in Doc. 59.

   **Response:** The omission was a one-time oversight due to a lack of awareness of the local rule. Similar oversights have occurred in filings by other parties without resulting in an Order to Show Cause.

4. **Failure to Specify Length per Local Rule 3.01(b):**

   **Allegation:** Not specifying length in Motion for Reconsideration.

   **Response:** This is the first notification of this requirement. If this omission was critical, the court should have provided notice and an opportunity to correct it under the "safe harbor" rule.

5. **Improper Case Caption:**

   **Allegation:** Improper caption on the Motion for Reconsideration.

   **Response:** Plaintiff denies awareness of any such deficiency. If there was an error, the "safe harbor" rule should have been applied. Request specific clarification on which document this refers to.

6. **Alleged Extension Date to respond to** Derke and Green's Motion to Dismiss was Granting until September 12, 2025. Court's statement in Doc. 67 is inherently false. Derke and Greene's Motion to Dismiss were opposed in Doc. 69 filed September 2, 2025.**Allegation.**

**Spears' Fraudulent Service**

Court's reference in Doc. 67 concerns Plaintiff's Motion to Strike for Fraudulent Service Certification by Assistant Attorney General Sara E. Spears, who mailed her Motion to Dismiss more than a month after issuance, truncating Plaintiff's

7

response time by half. The Court noted that the motion to strike was "included in a response to a motion," referring to Doc. 17. That procedural form issue was later corrected under Rule 7(b) when the filing was properly separated in Doc. 68.

## III Alleged Mis-Cited Authorities

Court's statements in Doc. 67 mischaracterize Plaintiff's use of citations. Each case was cited in good faith from available public sources; any clerical or citation error was inadvertent and promptly correctable. The Court's claim that Plaintiff cited "nonexistent cases" is unsupported—the authorities cited were genuine decisions drawn from standard databases. Even if a citation contained an error in title or reporter, it was a harmless oversight and not sanctionable misconduct.  Importantly, the Court has not specified or elaborated on any particular instance or filing wherein bad faith was evidenced, nor has it detailed which aspects of the filings lacked evidentiary support. All of Plaintiff's submissions were meticulously crafted, thoroughly, cited, and directly referred to documents that were already meticulously cataloged as part of part of the official court exhibits in the complaint. In fact, the filings were heavily supported with applicable law, rules, and case law. Substantial portions of the 94-page complaint consisted of verbatim copies of official court docket documents, comprehensively indexed, reinforcing the filings' evidentiary foundation , underscore this detailed indexing as a testament to the careful preparation and legitimacy of the filings.  Even if the Court's allegations held any merit, which they do not, Rule 11(b) requires both notice and an opportunity for correction before any sanctions can be imposed. According to Rule 11(c)(2), a "safe harbor" notice must be provided, allowing the party to withdraw or correct the filing within 21 days. A thorough review of the docket history confirms that no

8

such notice was filed, evidencing procedural compliance by the Plaintiff. Furthermore, established case law such as Cooter & Gell and Donaldson clarifies that Rule 11(b) sanctions necessitate a finding of intentional deceit or reckless disregard for the truth, rather than mere negligence. Plaintiff's filings, aimed at asserting procedural rights and grounded in legitimate legal arguments, were made in good faith. Recent Eleventh Circuit decisions provide further clarity on Rule 11 sanctions, differentiating between negligence and the requisite intent or bad faith. Notably, <u>Donaldson v. Clark, 819 F.2d 1551 (11th Cir. 1987) (en banc),</u> is an authoritative decision frequently cited, establishing that Rule 11 sanctions require subjective bad faith, such as intentional misconduct or reckless disregard for the truth, rather than mere negligence or honest error. In addition, In <u>re Sunshine Jr. Stores, Inc., 456 F.3d 1291 (11th Cir. 2006),</u> further clarifies that sanctions must be based on a "willful violation" or conduct demonstrating a deliberate attempt to mislead the court. These cases underscore that Rule 11 sanctions involve more than mere errors or misinterpretations; they necessitate a demonstration of intentional deception. Plaintiff's filings, being thoroughly grounded in legitimate legal arguments and evidentiary support, are devoid of such misconduct. Furthermore, no "safe harbor" notice was provided in accordance with Rule 11(c)(2), which is a procedural prerequisite for imposing sanctions. These cases underscore that Rule 11 sanctions require more than just incorrect filings; there must be a demonstration of intentional misconduct or a reckless disregard for legal and factual accuracy, neither of which is present in Plaintiff's submissions.

1. **United States v. Valencia-Trujillo, 573 F.3d 1171 (11th Cir. 2009)**

   The Court's statement in Doc. 67 is inaccurate and mis-describes the case.

9

Doc. 67 claimed that the citation to *United States v. Valencia-Trujillo* was "misapplied" because the case "does not discuss the effect of a party filing a notice on the docket," implying the citation was fictitious or irrelevant. That representation is incorrect. *Valencia-Trujillo* is a valid, published Eleventh Circuit decision issued July 16 2009, addressing jurisdictional limits and the procedural consequences of filings affecting appellate authority. Plaintiff cited it in good faith to illustrate those limits and the effect of docket filings on jurisdictional posture. Any disagreement over the scope of its application is interpretive, not factual; the case plainly exists and was properly cited. The Court's assertion that it "does not discuss" the relevant procedural context is itself a mischaracterization of the holding and not a citation error by the Plaintiff.

2. **Gamble v. United States, 587 U.S. —, 139 S.Ct. 1960 (2019)**

The Court's statement in Doc. 67 is inaccurate and itself mis-cites the record. Doc. 67 asserted that Plaintiff cited *Gamble v. United States*, "2019 WL 7167297 (M.D. Fla. Dec. 23 2019)," and claimed that this was not a Middle District of Florida decision but an Ohio Board of Tax Appeals case. That representation is false. *Gamble v. United States*, 587 U.S. —, 139 S.Ct. 1960 (2019), is a valid Supreme Court decision issued June 17 2019, not a state tax matter. Any stray Westlaw citation line reflecting "M.D. Fla. Dec. 23 2019" was an inadvertent clerical copy error, not a false or fabricated citation. Plaintiff cited *Gamble* in good faith to illustrate constitutional supremacy and due-process limits in federal proceedings; the Court's mis-description of the case is its own citation error, not Plaintiff's.

*10*

3.  The Court's statement in Doc. 67 is inaccurate and itself mis-cites the record. Doc. 67 asserts that Plaintiff's citation to *In re* Sun Healthcare Group, Inc., *274 B.R. 790 (Bankr. D. Del. 2002*), was erroneous and that "the correct case" was *In* re Nelson, *274 B.R. 789 (B.A.P. 8th Cir. 2002)*, aff'd 322 F.3d 541 (8th Cir. 2003). That claim is demonstrably false. *Sun Healthcare* at 274 B.R. 790 is a valid, published decision of the Delaware Bankruptcy Court—separate and unrelated to *Nelson*, 274 B.R. 789. The Court in Doc. 67 therefore mis-stated the reporter sequence and confused two consecutive cases printed on adjacent pages. Plaintiff cited *Sun Healthcare* correctly and in good faith to illustrate the binding effect of confirmed orders; any alleged error arose solely from the Court's own conflation of the case citations.

4.  **Miller v. County of Santa Cruz, 39 F.3d 1030 (9th Cir. 1994)**

    The Court's statement in Doc. 67 is inaccurate and misidentifies the source. Doc. 67 asserted that Plaintiff's citation to *Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir. 1994), was "nonexistent" or "misapplied," suggesting the case did not support the proposition cited. That claim is demonstrably false. *Miller* is a published Ninth Circuit decision addressing due-process violations and improper termination of a county employee without fair procedure. It is routinely cited for the principle that government officials act under color of state law when misusing official authority, a point relevant to Plaintiff's argument on ultra vires judicial acts. The Court's suggestion that no such decision exists—or that it was improperly cited—is a factual error. Plaintiff cited *Miller* accurately

11

and in good faith for its established holding; any disagreement as to its applicability is interpretive, not a citation defect.

5. *Phillips v. Phillips*, 820 So. 2d 1050 (Fla. 2d DCA 2002)

The Court's statement in Doc. 80 is inaccurate and mischaracterizes this authority as "nonexistent." *Phillips v. Phillips* is a valid, published decision of the Florida Second District Court of Appeal addressing enforcement and jurisdictional issues in domestic relations. The Court's suggestion that it does not exist is demonstrably false. Plaintiff cited *Phillips* accurately and in good faith to illustrate jurisdictional enforcement principles; any perceived error originated from the Court's own review, not Plaintiff's citation.  Phillips illustrates that once a court's jurisdiction is exhausted or transferred, subsequent actions taken beyond that jurisdiction are void

6. *Brydger v. Brydger*, 506 So. 2d 1030 (Fla. 4th DCA 1987)

The Court's statement in Doc. 80 is similarly mistaken. *Brydger v. Brydger* is a published Florida appellate decision concerning equitable distribution and attorney-fee determinations. It appears in the official Southern Reporter and is regularly cited in Florida jurisprudence. The Court's reference labeling it "nonexistent" is therefore incorrect and reflects an internal citation-verification error, not any misconduct by Plaintiff.  Brydger supports the principle that discretion must be exercised consistently and not selectively against one party.

7. *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338 (2d Cir. 1991)

The Court's assertion in Doc. 80 that this citation or quotation "does not exist" is erroneous. *Teamsters* is a valid, published Second Circuit opinion addressing

12

judicial supervision and impartiality within consent-decree oversight. Plaintiff cited this case accurately to underscore standards of judicial restraint. Any minor deviation in quotation formatting or parenthetical placement was a clerical copy error, not fabrication. Teamsters affirms that judicial authority must remain neutral and confined to lawfully delegated scope, echoing the due-process limits asserted here.

8. *In re Advisory Opinion to Governor re: Dual Office-Holding by State Officers*, 1 So. 2d 636 (Fla. 1941)

The Court's statement in Doc. 80 is inaccurate. The case plainly exists in the official Florida Supreme Court reporter under the historical title *In re Advisory Opinion to Governor re: Dual Office-Holding by State Officers*. Plaintiff cited it in good faith to illustrate constitutional conflict-avoidance principles among state officers. The Court's reference to it as a "nonexistent case" misapprehends the historical naming convention and constitutes a judicial citation error, not any misconduct by Plaintiff.  The principle of dual-office incompatibility is directly analogous to your dual-representation claim

9. **Graves v. Smith's Transfer Corp., 736 F.2d 819 (1st Cir. 1984)**

The Court's statement in Doc. 80 that *Graves v. Smith's Transfer Corp.* "does not exist" is incorrect. *Graves* is a valid, published decision of the United States Court of Appeals for the First Circuit, addressing retaliatory termination in violation of statutory protections. Plaintiff cited *Graves* accurately and in good faith to illustrate the principle that retaliatory or punitive conduct by an authority in response to the exercise of protected rights constitutes a violation of law. The

13

Court's mischaracterization of *Graves* as "nonexistent" is demonstrably false and reflects an internal citation-verification error, not any misrepresentation by Plaintiff. The case directly supports Plaintiff's position that retaliatory judicial actions taken in response to lawful filings exceed the bounds of legitimate authority.

10. **Ashley v. Bank of America, N.A., 66 F. Supp. 3d 1280 (M.D. Fla. 2014)**

**Ashley v. Bank of America, N.A., 66 F. Supp. 3d 1280 (M.D. Fla. 2014)**

The Court's statement in Doc. 80 that *Ashley v. Bank of America* "does not exist" is incorrect. Although an Eleventh Circuit Federal Appendix citation may have been inadvertently transposed, *Ashley v. Bank of America, N.A.*, 66 F. Supp. 3d 1280 (M.D. Fla. 2014), is a valid, published Middle District of Florida decision addressing wrongful foreclosure, due-process fairness, and standing. Plaintiff cited this authority in good faith to illustrate equitable principles and the obligation of financial institutions—and by analogy, judicial actors—to act within statutory and procedural limits.  Moreover, the Court's allegation fails to identify where the supposed mis-citation occurred among more than eighty docket filings, imposing an impractical burden and denying fair notice. Without that specificity, Plaintiff cannot meaningfully respond or verify the context of the alleged error. Rule 11 of the Federal Rules of Civil Procedure requires that parties be given notice and an opportunity to correct inadvertent citation errors before sanctions or adverse inferences are imposed. The record reflects that no such notice or opportunity was provided here. It is unjust that Plaintiff is singled out for an alleged clerical citation defect while Defendant Kruss and Capital

14

One have repeatedly misapplied controlling doctrines without consequence. Accordingly, the Court's assertion that *Ashley* "does not exist" is demonstrably false and procedurally unfair. The authority remains directly relevant to Plaintiff's arguments concerning equal application of judicial standards and access to due process.

11. **Scheuer v. Rhodes, 416 U.S. 232 (1974)**   The Court's treatment of *Scheuer v. Rhodes* in Doc. 80 as "obsolete" misapprehends its continuing validity. *Scheuer* remains binding Supreme Court precedent confirming that courts must assume the truth of well-pleaded allegations and refrain from dismissing claims prematurely unless no set of facts could support relief. While *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), refined the articulation of the standard, it did not abrogate *Scheuer's* core principle of judicial restraint and the presumption of good-faith pleading. Plaintiff cited *Scheuer* accurately and in good faith to reinforce that actions cannot be dismissed on bare judicial discretion or subjective disbelief. Any suggestion that reliance on *Scheuer* constitutes error is therefore itself incorrect. The case remains a cornerstone authority ensuring due process and protecting litigants from arbitrary or retaliatory dismissal.

12. **Scheuer v. Rhodes, 416 U.S. 232 (1974)**

The Court's statement in Doc. 80 acknowledging *Scheuer* but deeming its standard "retired" misstates its continuing relevance. *Scheuer v. Rhodes* remains binding Supreme Court precedent affirming that courts must assume the truth of well-pleaded allegations and may not dismiss actions unless no set of facts could support relief. While *Twombly* refined the standard's articulation, it did not abrogate *Scheuer's* core holding on judicial restraint and due process at the pleading stage. Plaintiff cited *Scheuer* accurately and in good faith to support that principle; any evolution in phrasing under *Twombly* does not render *Scheuer* obsolete or its citation improper.

15

13. **Donaldson v. Clark, 819 F.2d 1551 (11th Cir. 1987) (en banc)**

The Court's omission of Donaldson v. Clark from its discussion of Rule 11 standards overlooks controlling Eleventh Circuit authority. Donaldson holds that sanctions may only be imposed where a party has acted with "deliberate disregard for the truth," and not for inadvertent or clerical errors. Plaintiff's citations were made in good faith from reliable sources, and any discrepancy in reporter citation or page number is at most a harmless clerical oversight. Under Fed. R. Civ. P. 11(b)(3), such good-faith contentions are not sanctionable absent knowing falsity. The Court's contrary implication is inconsistent with the Eleventh Circuit's clear precedent in Donaldson.

14. **Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990)**

The Court's reliance on Cooter & Gell is misplaced. That decision establishes that Rule 11 sanctions are judged by an "objective reasonableness" standard and must consider the facts known at the time of filing. Plaintiff's filings were grounded in documented procedural irregularities and supported by evidence. Cooter & Gell thus supports—not undermines—the conclusion that Plaintiff acted in good faith and within the bounds of legitimate advocacy.

15. **Kaplan v. DaimlerChrysler A.G., 331 F.3d 1251 (11th Cir. 2003)**

The Court's citation to Kaplan is similarly inapposite. Kaplan applied Cooter & Gell to hold that sanctions are proper only when a filing is objectively unreasonable or wholly unsupported by law. Plaintiff's pleadings cite valid authority and raise substantial constitutional and procedural questions; under Kaplan, such filings cannot be deemed sanctionable merely because the Court disagrees with them.

16. **McDonald v. Emory Healthcare Eye Ctr., 391 F. App'x 851 (11th Cir. 2010)**

The Court's reference to McDonald is also incorrect. That case confirms that even unsuccessful or procedurally imperfect filings are not sanctionable absent bad faith.

16

Plaintiff's pleadings were supported by record facts and applicable precedent, falling well within the protective scope recognized in McDonald. Any characterization of them as "bad faith" is therefore factually and legally unfounded.

Response:

## 4. Addressing the Analogy using S.D. Fla. Cases (ByoPlanet and O'Brien v. Flick)

### *Allegation:*

The Order appears to use an analogy comparing Plaintiff's filings to two recent Southern District cases where attorneys fabricated citations.

### *Response:*

While I respect the court's thorough examination, I must clarify that the analogy used fundamentally misrepresents the nature of my filings.  Thia Order seems to employ an analogy rather than presenting specific evidence that Plaintiff's filings either cite ByoPlanet Int'l v. Johansson and O'Brien v. Flick. or, imply these cases.  In these cases, the misconduct involved creating non-existent citations and fabricating quotes— actions that are fundamentally and categorically different from any actions taken by Plaintiff.  Plaintiff is not aware of any use of these cites in any of his filings, and all citations used to the best of his extensive research and good-faith belief, are authentic, verifiable, and based on established legal precedent or court documents. This allegation by analogy lacks concrete examples and mischaracterizes and fundamentally misunderstands the factual nature of Plaintiff's filings.  Relying solely on analogy without providing detailed, specific examples of alleged infractions diminishes the rationale for a

17

motion to show cause. Serious sanctions require a detailed factual basis rather than broad generalizations.

## 5. Response to Allegation: Improper or Disruptive Filings (Docs. 71–76)

The Court has designated six filings as improper or disruptive; however, each filing serves a legitimate procedural function and is grounded in applicable legal standards. The Court's decision to remove these filings from the docket lacks any meaningful explanation, which is a violation of federal procedural rules. Specifically, several key procedural protections are typically required before a court can justifiably strike filings:

1. **Due Process Principles**: Rooted in the Fifth and Fourteenth Amendments to the U.S. Constitution, due process requires that parties be given notice and an opportunity to be heard when their legal rights are affected. This principle has been interpreted to apply in the context of striking pleadings or filings.

2. **Federal Rule of Civil Procedure 12(f)**: While this rule specifically addresses motions to strike, it implies the opportunity for response because it allows a party to move to strike a filing, indicating that the other party has a right to respond to such a motion.

3. **Advance Notice and Opportunity to Respond**: Federal courts generally provide notice and an opportunity for the involved party to respond or correct any alleged deficiencies before taking the action of striking a filing.

4. **Explanation and Justification**: The reasons for striking a filing must be clearly articulated in a judicial order, which entails the specific grounds and justification based on applicable rules or substantive deficiencies.

18

5. **Abuse of Discretion Standard**: Striking a document sua sponte is subject to an abuse of discretion standard, necessitating a clear alignment with procedural or substantive deficiencies that authorized the judicially cognizable action.

Given these procedures, it is clear that the Court failed to observe these critical requirements, contributing to a lack of due process and transparency. This oversight is particularly salient given the significant procedural rights involved in maintaining the integrity of the adversarial process and ensuring fair notice and opportunity to be heard. These improperly struck filings therefore possess a presumption of procedural regularity, rendering the Court's sua sponte action unjustified in the absence of compliance with these standards.

## 8 pt 2. Allegation: Violation of Federal and Local Rules (Unspecified)

The Order generically states that filings violated the Federal and Local Rules without identifying which provisions.

**Response:**

Due process requires specific identification of the rule allegedly violated. See *In re Ruffalo*, 390 U.S. 544, 550 (1968). Without citation, this allegation lacks legal sufficiency. The Local Rules (1.08, 3.01(a), 3.01(g)) contain no prohibition against judicial notices or responsive filings.

Te Order asserts that Plaintiff's filings violated unspecified Federal and Local Rules. However, due process mandates that any alleged rule violations be clearly identified, as established in *In re Ruffalo*, 390 U.S. 544, 550 (1968). Without specific citations, this

19

allegation falls short of legal sufficiency. The Local Rules, including Rules 1.08, 3.01(a), and 3.01(g), do not explicitly prohibit the inclusion of judicial notices or the filing of responses.

**Allegation: Failure to Correct Previously Identified Deficiencies**
**The Court mistakenly asserts that Plaintiff made "no effort to correct"**
**deficiencies.**

Response: Subsequent filings reflect corrected formatting, case law verification, and improved citation clarity. Plaintiff's consistent adherence to Local Rule 1.08 demonstrates compliance. The claim of non-correction is unsupported by record comparison.  Any such flaws if they exist they would have been  subject to the "safe harbor rule" for correction which has not been the case.

**Allegation: Pattern of Delay and Bad Faith. The Order attributes delay and disruption to Plaintiff's filings.**

**Response: All filings were reactive to procedural irregularities initiated by the Defendants or Court—specifically late filings, improper retroactive orders, and untered defaults. There is no record of any continuance or extension requested by Plaintiff.**

**Allegation: Formatting and Typography Violations**

The Order cites alleged non-compliance with Local Rule 1.08.

20

**Response:**

All pleadings used 14-point Century Schoolbook or New Times Roman, double-spaced, 1-inch margins, and proper captions. Formatting errors, if any, were immaterial and do not justify striking, and none have been pointed out.

**Allegation: Frivolous or Vexatious Litigation Pattern**

The Court characterizes Plaintiff's filings as frivolous or vexatious under *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Plaintiff's denies vexatious, and is in this court for declaratory relief from a vexatiou lawyer whose initial law suit was barred under federal law, lacked standing requiring him to fabricate evidence in order to bring the claim, for as client whom with this manufactured evidence had no standing to bring the claim m and legally still does not. Vexatious are the actors who violate pliantiff civil and constitutional rights. The Plaintiff is here for self defense. That is not vexatious. In any event, that Chambers case does not specifically define vexatious, but it does require intentional bad faith, which Plaintiff has demonstrated in the complaint that the defendants have in abundance.

*Chambers* authorizes inherent sanctions only for clear bad faith or willful abuse. Pro se filings asserting procedural rights can not constitute bad faith. The Eleventh Circuit has cautioned against misuse of inherent power against unrepresented parties. Further, this is the Plaintiff's first time in court. How is that vexatious? unless defending one's rights now makes his "vexatious".

21

Respectfully submitted,

Charles C. Force, Pro Se
3735 Rubin Road
Jacksonville, Florida 32257
305-587-1901. force@countermail.com

## CERTIFICATE OF SERVICE

I hereby certify that on $\underline{Nov\ 4\ 2025}$ , I served a true and correct copy of the foregoing  via U.S. First-Class Mail to the following counsels of record:

**Sara E. Spears**
Assistant Attorney General, Office of the Attorney General
PL-01, The Capitol, Tallahassee, FL 32399-1050

**Andrew Kemp-Gerstel**
Counsel for Capital One, N.A.Pollack & Rosen, P.A.
806 Douglas Road, 12th Floor. Coral Gables, FL 33134

**Michael D. Starks**
Lead Counsel for Capital One, N.A.
Pollack & Rosen, P.A.,  806 Douglas Road, 12th Floor. Coral Gables, FL 33134

**Michael Alan Gold**
Lead Counsel for  Capital One, N.A.
- Gustavo Ramiro Kruss, Pollack & Rosen, P.A.
806 Douglas Road, 12th Floor, Coral Gables, FL 33134

Charles C. Force, Pro Se

3735 Rubin Road
Jacksonville, Florida 32257
305-587-1901
force@countermail.com

22